May be seated. Good afternoon, ladies and gentlemen. This is the time set for Daramola v. Oracle. May proceed. Thank you, Your Honors. May it please the Court. My name is Mary Schultz. I represent the appellant, Teo Daramola. I'd like to reserve five minutes for rebuttal. Your Honors, we are asking that this Court reverse the district court and make civil and criminal law consistent. As regards the accessing of a computer server, in this case to perform work for an employer, as opposed to committing a crime within that server. We're asking that this Court bring to life the commentary in South Dakota v. Wayfair that discusses the language of virtual presence as creating substantial contacts, continuing contacts with the jurisdiction. And we ask that this Court hold that, first, Mr. Daramola pled and evidenced the necessary substantial connection with the State of California for the purpose of applying United States and California law to a California defendant corporation by demonstrating a continuing virtual presence in California that was mandated by the defendant, Oracle America, itself. Second, we ask that this Court hold that Daramola was performing work for Oracle America as directed by Oracle America. We ask that the Court hold that the work Daramola was directed to do was required by Oracle America to be done on Oracle America's server. And critically, that Oracle America made access to that server in any form explicitly governed by the terms of use and an end-user license agreement for that server. But for any, for these whistleblower claims, Sarbanes-Oxley and Dodd-Frank, has any court adopted your server theory that somebody could be living and working abroad, and if they access the U.S. server, that's sufficient to allow them to take advantage of these U.S. laws? In none of the cases before this Court, in none of them, was an employee being required by a defendant corporation to access, to maintain a connection with the corporation's server in the State of California under commitment to a terms of use document and an end-user license agreement. In none of the cases has that occurred, and so I must assume from that that there's not been a case that's yet been presented with the facts presented here. And that's one of the reasons why I spend time talking about the criminal law, because the evolving law on both civil and criminal sides is to identify activity and access to servers as occurring at the location of the server. So the South Dakota v. Wayfair case is really the last case. It's a 2018 case, and it's really the last case to talk about this. It's premised by the 2014 case of Walden v. Fiore, where the court was speculating. It said, you know, one criteria for jurisdiction is whether the relationship arises out of contacts the defendant himself created within the forum state. But we're going to leave for another day how virtual presence and conduct translates into contacts with a particular state. So in 2018, the South Dakota v. Wayfair Supreme Court rules in on this and overrules the prior Quill physical presence rule, saying that it is artificial, quote, in its entirety, and holding that modern e-commerce does not align analytically with a test that relies on the sort of physical presence defined in Quill. This is important. Quote, the court should not maintain a rule that ignores substantial virtual connections to the state. I guess the concern I would have with this line of argument is whether it would end up meaning that these U.S. laws would basically apply to a huge number of people working outside the United States, including people like your client who are not U.S. citizens. And if accessing a server were sufficient, I think we're essentially going to be holding that these laws apply extraterritorially, and there's not a clear indication in the statute that that's what Congress wanted for either of these. I think, so the argument is not that this would apply to everyone across the globe. This would apply, this theory would apply, however, if the work that's being performed, that's being directed, requires the employee to access the company server on a daily, literally hour-to-hour fashion to perform their work. So as an example, you know, if you have, say, direct TV or something, and you're calling for service and you end up with someone in the Philippines, you know, who has no access to the company server other than very, very limited access to make notes, those type of individuals are not going to be subject to this kind of a theory. But when the directive from the company says that you will authenticate into our California server, subject to a terms of use agreement, and this terms of use agreement is a critical document for the decision here, and subject to an end-user license agreement, both of those documents, by their explicit terms, require that United States and California law apply, and both of those documents require that any action that relates to the access to the server be filed in the district court. Why would, even if the server access is something we would consider in the mix of contacts, why would you prioritize that over some of the other facts in the record about, you know, Mr. Deramola is a Canadian citizen. He worked in Canada for a Canadian sub. He did not come to the United States. He signed an employment agreement governed by Canadian law. I mean, there's all these other contacts that sort of point towards Canada, and you've identified this server as maybe one that points more towards the United States, but in the balance, why wouldn't you say that the locus of this employment relationship is really more in Canada? So, for a number of reasons, for a number of fact reasons. First of all, there is no – Mr. Deramola is not at an office in California. There is no Oracle Canada office. He works out of his home. Second, the work that he was performing here was not work being performed for Oracle Canada. He was not being directed by any Oracle Canada supervisor. He was not servicing any Oracle Canada customer. He – you know, so were the facts that Mr. Deramola was performing work on a Canadian project directed by a Canadian supervisor, we would not be here. What happened in this case is that Oracle America reached out from California. Can I interrupt you? Because your time is running, and we're really familiar with the facts of this case. I think it's a very important case and an interesting one. But I shared Judge Bress's question. It seems to me you're putting a lot of weight on accessing a server, and there are a lot of facts that I think you're just getting to now that indicate there were other contacts, significant contacts in the United States. So I'm trying to sort that out, and there's – we have the Garvey case that talks about it quite expressly. It's not binding for sure, but it expressly acknowledges that even where an employee is working overseas and the parent company is in the United States, if the employee's work is so intertwined with the parent, that there may be a viable claim there. And I'm not sure if you're – I'm just not sure where you're landing on that, because it seems to me that you're putting a great deal of emphasis just on the virtual nature of the work. So in the Garvey case, there was no evidence like in this case. Right. In the Garvey case, there's no evidence about that employee having to authenticate into a United States server to perform the work. I know. I'm asking you to set aside the server, because I think you have a really tough row to hoe on that, and I'm only one of three. But it seems to me there's a lot of other context here that may – that I think are uncontested, at least at this point, or may indicate that amendment wouldn't be futile, because he had a lot of context in the United States. And I – you might have a very purposeful reason for not focusing on that today, and I know you don't have very much time, but what am I missing here? Well, to the extent that I understand the question, I think that the critical aspect of this appeal is the difference between a generic employment agreement, which says that when you're doing work for us, this will control, versus what happens when you actually enter into someone's server. I think that that is a critical issue. Okay, but so let's go to this – there's a presumption against extraterritorial application, of course. Correct. And I'm going to ask you to assume that I don't see any – that that is expressly rebutted here, okay? But there are – we're going to look at the focus of these statutes, and Dodd-Frank in particular, it seems to me, to have a very sharp focus on soliciting, encouraging, motivating reports to the SEC, not just internal reports, but to the SEC. And so I'm looking at that and looking at the context here, and it seems to me there's – well, first of all, let me say, there's a lot of context to something called NetSuite, including the offer of employment and the confidentiality agreement. And I don't have in this record – I don't know if NetSuite was a domestic entity or not. NetSuite is Oracle America. Oracle America acquired NetSuite. Right, so we can see the acquisition in our record. We can see that he alleged that he was an employee of NetSuite, as well as alleging that he was an employee of the Canadian sub. So what do we do with that? So the heading of the pleading is that this is an action against Oracle America on – of its own accord. Right. And acting through the subsidiaries. And, again, the issue here is the court wants me to talk about some of the other contacts within the United States, and they are, of course – they are numerous. I mean, all of the work that he performed was in the United States. There is an argument to be made that the only jurisdiction in which this action could be brought is in California, because there wouldn't be jurisdiction in Texas. There wouldn't be jurisdiction in Washington. There wouldn't be jurisdiction in Utah. All of these states he was assigned to perform projects for. What is the one common denominator of all of this? It's the fact that he has to authenticate into the California server. I want the court to consider this. If Mr. Deramola could be criminally charged in the state of California for accessing Oracle America's server in the state of California because of the computer fraud access rules, 18 U.S.C. 1030, all of the law that's developing, he could literally be criminally charged for his work being performed in that server for Oracle America in California. Right. But you're rather talking apples and oranges because your argument seems to be if he has to authenticate through the server, that makes him an employee as opposed to someone who is gaining access to a server and doing harm, which is different. Well, it's only different in the ramifications. It's not different in the sense that the location, the locus delecti of activity where one is accessing a computer server is at the server. I'm not sure. I kind of have the same question Judge Thomas does. It seems that if you're talking about, for example, like a wire fraud statute, the focus of the wire fraud statute is the misuse of the wires. Okay, well, so we're going to look at where that took place. And if you're misusing the wires here in the United States and you're subject to prosecution here for that, the question here, it seems to me, is where is the focus of Mr. Deramola's employment relationship? Because that's what I think Garvey doesn't seem to be disputed here, that that's the focus of these statutes. And so then I'm asking myself, well, where is his employment relationship really based? And there's arguments about both countries, but I don't think it really proves much to be talking about the wire fraud statutes. I think it is important to talk about the wire fraud statutes and the criminal statutes because I think that the law has to be made consistent. I don't see the inconsistency. Because accessing the computer and doing harm is one act. Accessing a computer and arguing that that access transforms the person into an employee when he's employed by somebody else is another concept. So on that issue, Your Honor, on who is the employer, Oracle America is without question directing all aspects of this employment. And under the California Code, as an example, that makes him an employee of Oracle America. So Oracle Canada has no relevance to any of the facts that are pled in this complaint. All of the work that he is performing is being performed at the directive of Oracle America. And so that's why we are asserting that under California law and under de facto employment, his work is being done for Oracle America and it is his employer. So he was in Canada. That's where he lived. That's where he showed up. I understand your argument about accessing the server. Well, that's not where he showed up. I understand your argument about accessing the server, and I don't know how we could be clearer than that. That approach seems like a real uphill battle. So if I could just get you to engage, it would be helpful to me, at least for my part of the analysis, which is we've got to deal with this presumption against extraterritorial applications. So we're looking at the focus of the statute and the focus of these two statutes, which I don't read to be identical, but they're both protecting whistleblowers, that's for sure. And do you read that differently? I note that I'm beyond my time. May I go ahead and answer the question? Sure. We are not asking for extraterritorial application of the statute. We are asserting second provision, which is this is entirely domestic activity. Right, which is the point we've all been trying to make, I think, which is why we're looking for the employer-employee relationship. That's correct, and that's why we're asserting that Oracle America is the employer for the purpose of the facts alleged in this complaint. Understood. Very good. Thank you. Okay. Your time has expired, but we'll give you a couple minutes for rebuttal. Thank you. May it please the Court, my name is Sarah Bouchard, and I represent the appellees. We respectfully request that the Court affirm the district court's dismissal of Mr. Deramola's second amended complaint. As you've noted, the core question for this appeal is whether Mr. Deramola's employment retaliation claims are barred because his allegations do not support a domestic application of the laws at issue. The district court correctly held that Mr. Deramola's allegations are not domestic based on the following undisputed facts as alleged in his complaint. Mr. Deramola is a Canadian resident employed by Oracle Canada, which is a Canadian company. Can I stop you there? He also alleged he was employed by NetSuite. So NetSuite was acquired by Oracle, and then Oracle Canada became his employer, and that is in the record. I have a hard time connecting the dots chronologically. He was only employed for a little less than a year here. He was previously employed by NetSuite, which was then acquired by Oracle Canada, and he was only employed by Oracle Canada less than a year. The offer of employment in our record is from NetSuite. The confidentiality agreement is from NetSuite. There is a confidentiality agreement from NetSuite, and then there's a separate employment contract, which is part of the record, from Oracle Canada based on the NetSuite acquisition. And the offer is from NetSuite. The offer is to Oracle Canada, and I can cite to that, Your Honor. Offer to? Do you mean offer from? Offer of employment. Offer of employment is, just let me find it very quickly here. So it's from Oracle Corporation, and it's at ER1082, and it's a letter to Mr. Deramola on November 30th, 2016, and it states that Oracle Corporation has acquired NetSuite, and in connection with the acquisition, we are pleased to offer you a position with Oracle Canada with an anticipated start date of January 1st, 2017. Is that ER1040? 1082. We're looking at two different documents, but go right ahead, please. Okay, thank you. He worked in Canada and did not enter the United States at any relevant time. His operative employment agreement was governed by Canadian law, and he has already pursued claims against Oracle Canada under Canadian labor laws. Forgive me for interrupting again, but you said he did not enter the United States at any relevant time. What were the six months? Is it about six months that he was in New York? Is that right? So he has signed a declaration that's not part of the complaint, and you do not need to rely on that. Judge Donato did not rely on that for the purposes of his analysis. There's only, so let's, if we could clarify that. This is 12b-6. There's only, he was asked to convert. He did not convert. So we have one document that the judge relied upon. I think it's the resignation letter. Otherwise, we're not looking beyond that. Isn't that right? Well, you can incorporate by reference, and Mr. Deramola did submit on appeal his employment contracts. So you can incorporate those by reference because those were referenced in the complaint. Mr. Deramola. I take it those were filed in the district court, though, these employment agreements? The district court, let me step back. Mr. Deramola asserted in his briefs and attached to his briefs in responding to the first amended complaint dismissal, he attached those agreements. The district court's ruling did not rely on those agreements in his opinion. He simply stated that Mr. Deramola worked and lived in Canada. Wasn't there a request for him to convert this 12b-6 motion, and he did not convert it, did he? There is no conversion of a 12b-6, correct. Now, Mr. Deramola asserts that despite these facts, he should be permitted to bring claims under the anti-retaliation provisions of Sarbanes-Oxley, Dodd-Frank, and California labor laws. He does not dispute, as we've heard, that those laws do not apply on an extraterritorial basis. He instead claims that he's seeking a domestic application of those claims because he allegedly reported fraud occurring in the U.S., he performed work for U.S. managers and customers, and his employment required use of Oracle servers, allegedly in California. The district court correctly found that these U.S. connections are irrelevant under prevailing law and that Mr. Deramola's claims are not domestic. With respect to Sarbanes-Oxley and Dodd-Frank, the Administrative Review Board and various courts, including most recently the D.C. Circuit, the Garvey opinion that Your Honors mentioned, have held that SOC's anti-retaliation provisions in Section 802 are employment in nature and are meant to protect U.S. employees. The same is true for Dodd-Frank's anti-retaliation provision. Counsel, are you familiar with the Summers opinion? It discusses the difference between the focus of Sarbanes-Oxley and Dodd-Frank. I am familiar, yes. And Dodd-Frank, the anti-retaliation provisions, which Mr. Deramola is filing suit under, do provide additional benefits. It provides the benefit of double back pay, and it does so because you have to assert that you've gone to the SEC in order to claim and afford protection under that statute. And why that's actually important here is Mr. Deramola was not without a remedy, and he isn't without a remedy. He alleged in his complaint that he contacted the SEC, presumably to seek a bounty of some sort for purported fraud that he alleged was occurring, and he alleged that he did that in 2017. And importantly, a bounty such as that can be made by anyone in the world. So he had a remedy. He asserted that remedy with respect to going to the SEC. With respect to the California labor law claims, courts examining this issue under the California Labor Code and the California Unfair Competition Law have reached similar holdings. They've held that California laws are intended to protect California residents and employees, and they're not intended to extend to any plaintiff who works for a company that is a subsidiary or affiliate of a California company or any company with digital contact with California, as Mr. Deramola asserts. The district court opinion is consistent with the general principles of statutory interpretation espoused by the Supreme Court, which has held that legislators speak clearly and carefully when they want to regulate employment relationships in foreign countries, and that is because employment relationships are primarily the foreign country's concern and there's a high risk of international conflict otherwise. Here it's clear that Congress and the California legislature intended the laws at issue to protect U.S. and California laws respectively. And because Mr. Deramola lived and worked in Canada, his claims alleging employment retaliation and constructive discharge should be governed by California law. And I'm going to skip to the domestic application of his claims under Sarbanes-Oxley and Dodd-Frank because Mr. Deramola has conceded that there is no extraterritorial application to these statutes. As we've stated, the various courts and the ARB have held that the key factor is the principal place of business for the plaintiff, and this is because the principal place of employment would be the location where the employees have suffered the harm that those anti-retaliation provisions aim to prevent. The second amended complaint in Mr. Deramola's own brief acknowledged that he resided in Montreal, Canada, at all relevant times, that he was employed by a Canadian company to work out of an office in Canada, that he signed an employment agreement with Oracle Canada that is subject to Canadian law. And the alleged adverse action occurred in Canada when Mr. Deramola submitted his resignation letter to Oracle. Mr. Deramola cannot- Could I get you to clarify? Forgive me for interrupting. I thought that he alleged that he worked, as I said earlier, also for NetSuite, and I thought that he submitted letters of recommendations both places, to Oracle and also Oracle Canada. Do I have that wrong? He only submitted a resignation letter to Oracle Canada. Was NetSuite operative by that point, or it had been acquired and folded in? It was acquired and folded in, and that is at the record- I've got the folded in part, but I have a record site for two letters of resignation, but I'll double-check that. I didn't want to interrupt you. Go ahead. So the letter of resignation is at ER1108, and he writes it to Oracle Canada at a Montreal, Quebec address, and he says, Please be advised that I have hereby officially resigned from my duties as consulting project senior principal consultant. That's the one, but do you not have the other? You don't have a record of a second letter? This is the one that's in the record, Your Honor. Okay. I'll get back to it. Go ahead. Okay. Thank you. So one thing that Your Honors had pointed out, which I believe is important, was in Garvey. Garvey noted that the clear focus of Section 806 is on regulating employment relationships, and as such, the locus of the employee's work and the terms of his employment contract are critically important. And these admissions, the ones that I submitted, that he resigned to Oracle Canada, that his employment agreement was with Oracle Canada, and that he sought legal advice in Canada and pursued a wage and hour claim in Canada, all demonstrate that his principal place of employment was in Canada and not the U.S. We've heard much today about the servers and whether that somehow creates some U.S. or California contact, and it doesn't. The district court correctly held that allegations such as these are not sufficient to establish a domestic claim given the other critical facts reflecting employment in Canada. And reporting fraud allegedly occurring in the United States does not establish that his claim is domestic. As Your Honors noted, he is not bringing a fraud claim as a victim of the alleged fraud. He's alleging retaliation in the form of constructive discharge of his employment, which allegedly affected him in Canada and his employment with Oracle Canada. Counsel, I'm not sure that matters. Just so you know, I have a letter of designation to Matthew Posey at ER 993 and 999 at Oracle. It may not matter for your argument, but I'm... The resignation letter that's at issue is the one from Oracle Canada because that was his last employment. He did resign and then come back. I just need to line up the chronology. You think I'm looking at one that is not the operative? What's your position on the second letter? The second letter is the operative one because that's when he contends that the constructive discharge occurred. Thank you. Okay. With respect to his California law claims, courts have considered the following factors when deciding whether a California claim is extraterritorial, and it's the employer's citizenship, the employee's citizenship, where the employee worked, where the alleged adverse employment action occurred, and where the employer decided to commit the alleged adverse action. Sullivan v. Oracle Corporation is instructive here because it stated that there's a presumption against extraterritoriality in federal law, and that goes for California claims. The Weinberg decision is particularly instructive here because the only connection in the Weinberg decision between plaintiff's place of work in Arizona and California was that there was an unspecified portion of his time involved remotely accessing and working with data stored on computer infrastructure located in Canada. And under those facts, the Weinberg decision held that those are not sufficient facts to support claims under California law. As we stated, Deramola does not dispute the Weinberg factors that I previously articulated. As he was employed by a Canadian company, he was a resident and citizen of Canada who never came to California at the relevant time. He worked in Canada, and the alleged adverse action occurred in Canada. In closing, Your Honors, there may be a case out there where there were sufficient domestic contacts that would otherwise be suited for a foreign employee to have the application of U.S. laws, but as the Garvey decision said, it was not that case and it is not this one. Thank you. Thank you. We'll give you three minutes for rebuttal. Thank you, Your Honor. If this is a Rule 12b-6 motion only, then the complaint alleges that while Mr. Deramola resides in Canada, he was employed by defendant Oracle to do business in the United States with United States customers, and his injuries arise from predicate acts in the United States. That's paragraph 360 of the complaint. Mr. Deramola's work, this is paragraph 361, emanated from California as a result of the same terms of use commitments required by Oracle. Paragraph 362, by terms of use, Mr. Deramola committed to the personal jurisdiction of the State of California each time he accessed Oracle's website for his work. If this is a 12b-6 motion only, those provisions are taken as true. Mr. Deramola's argument for jurisdiction in this case, or for the application of the United States laws, we do not concede that these laws do not apply extraterritorially. What we say is this is purely domestic activity. I listened to counsel's argument and... So do you believe they apply extraterritorially? I think the Second Circuit has said that SOX does not. I think the ARB, the Garvey decision, has said that Dodd-Frank does not. I don't believe that there's been a ruling on that. I believe, frankly, I think that the court should consider that when an employee is being required to violate United States laws through a server in the State of California to engage in SOX-procured conduct, that SOX should apply. SOX is designed to protect investors, and this is an employee who is involved in being involved in the fraudulent conduct. I want to also say... Just to be clear, though, would that end up putting us at odds with the D.C. Circuit and the logic of that decision that, you know, we're not looking at where the fraud occurred that he's complaining about or alleging happened. We're looking at the focus of this as the employment relationship. I think the focus of SOX is the effect. The SOX law and the Dodd-Frank law are designed to protect investors, and that has to be the focus in determining whether or not the conduct alleged should arise or should be viable under SOX or Dodd-Frank. I also want to say that what do you do with the terms of use and the end-user license agreements? You can look at all of the facts. You can look at where he lives. You can look at X and Y. But what do you do with those legal contracts that Mr. Deramola entered into that say... Which gave him access to the computer, but it says nothing about the employment relation. It talks about a use of software. It's a generic terms of use agreement. And your argument is that converts his status to an employee of Oracle, right? No, my argument is that because he's being directed to access that server, his use of that server is controlled by that terms of use and end-license user agreement. There's nothing in the agreement that talks about employment. If they allowed an independent contractor to access a server for various reasons, your argument would be that that contractor is an employee, right? No, my argument would be that that contractor is required to bring his action in the San Francisco District Court because... Pertaining to the use of the computer. Correct, but that's what we're talking about here. We're talking about action that arises through Oracle America's server, which is explicitly committed to United States law and filing in the San Francisco District Court. All of the activity that arises here, per the declarations and per the complaint, arises as a result of conduct occurring within Oracle's California server. And because of that, it's subject to the terms of the use of that server. There is nothing inconsistent, Your Honors, about having an employment agreement that says you're employed by Oracle Canada. Here is your requirements for Oracle Canada. And then Oracle America is saying, but you're going to now do some work for us and you're going to enter into our server. And as Mr. Deramola indicates in his declaration, which is unrebutted, that in order to perform this work for Oracle America, I committed, I bind myself to California law and agree to file any action in California. Pertaining to the access to the computer. Which is the critical, which is how he works. I understand that, but what access did he have that he alleges now involved the terms of use of the agreement? In his complaint, he specifically addresses the terms of use as controlling his... I think that's undisputed as to his use of the server. And so then the terms of use must control. That's really a legal argument. That's not something we would credit in a complaint. That's a legal argument about the alleged legal significance of these. What's in the complaint is just a factual allegation and the legal import of that is a different story. Well, again, I point to the distinction between generic employment and you will now perform your work on this server. Access to a computer server is controlled by the terms of use of that server. And where Oracle commits its customers as well as its employees to California jurisdiction and filing in the San Francisco District Court for any access to that server, that is what necessarily controls. Okay. Your time has expired, counsel. Thank you for your arguments. Thank you both for your arguments today. The case you just argued will be submitted for decision and will be in recess for the afternoon.
judges: THOMAS, CHRISTEN, BRESS